## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
DAVID SELLOW,                      :
                             :
          Plaintiff,         :      Civ. No. 18-13820 (PGS)(TJB)
                             :
       v.                     :
                             :
IHUOMA NWACHUKWU,        :      **OPINION**
                             :
         Defendant.       :
—————————————————————:

**<u>PETER G. SHERIDAN, U.S.D.J.</u>**

## I.    INTRODUCTION

Plaintiff, David Sellow ("Plaintiff"), is a state prisoner currently incarcerated at the New Jersey State Prison ("NJSP") in Trenton, New Jersey. He is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Presently pending before this Court is the Defendant Ihuoma Nwachukwu's motion to dismiss or in the alternative motion for summary judgment (*see* ECF No. 43) and Plaintiff's response (*see* ECF No. 47). On October 19, 2022, the Court held an evidentiary hearing. (ECF No. 61.) For the following reasons, the motion is granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his Complaint in September 2018. (ECF No. 1.) Plaintiff challenges the care, or lack thereof, he received while incarcerated at the New Jersey State Prison ("NJSP"). Plaintiff filed his Complaint against Defendant Ihuoma

Nwachukwu ("Defendant"), who according to the Complaint is a doctor at NJSP. (ECF No. 1 ("Compl.") ¶ 4.)

According to the Complaint, in June 2017, Plaintiff was taken to Saint Frances Medical Center for back surgery. (*Id.* ¶ 6.) Upon his return to NJSP's prison infirmary, Plaintiff informed Defendant that he could not feel his legs or walk. (*Id.*) Plaintiff was housed in the prison infirmary from June 22, 2017 until June 26, 2017. (ECF No. 43-3, Def's Statement of Material Facts ("DSOMF") ¶ 1, citing ECF No. 43-7, Electronic Medical Records ("EMR") 1339, 1354.) Defendant told Plaintiff that the "surgery had nothing to do with the legs, that he needed to get up and start walking, and let time do its thing." (Compl. ¶ 6.) Plaintiff asked Defendant not to discharge him from the prison infirmary or to send him to the medical unit in order to be able to have some help to take care of himself. (*Id.* ¶ 7.) Defendant refused and sent Plaintiff to his regular housing unit. (*Id.*) Defendant submits that Plaintiff was discharged from the infirmary on June 26, 2017, because he was fever free. (DSOMF ¶ 1.)

Plaintiff's and Defendant's version of event differ. Plaintiff alleges that while in the regular housing unit, Plaintiff tried to stand up to go to the bathroom and fell and hurt himself. (Compl. ¶ 9.) Plaintiff was then admitted to the prison infirmary. (*Id.*) Plaintiff informed Defendant about the fall and that he hurt himself. Defendant stated that she could only send him to physical therapy. (*Id.* ¶ 10.) Plaintiff "kept

insisting that something was wrong and pleaded with Defendant [] to send him to the hospital, but she deliberately ignored him to punish him for having filed a lawsuit against her in the past." (*Id.*)

Following the intervention by "Nurse Mitchell," and with the assistance of a physical therapist, Defendant sent Plaintiff to the hospital. (*Id.* ¶ 11.) An MRI was performed and "Plaintiff was immediately rushed to the operation room to have a medical procedure done." (*Id.*) Upon his return to NJSP, Plaintiff was confined to a bed at the prison infirmary for approximately two months. (*Id.* ¶ 12.)

Defendants submits that Plaintiff fell and was seen by other medical providers on July 3, 2017, and a neurosurgery consult was ordered. (DSOMF ¶ 3, citing EMR 1324.) Defendant saw Plaintiff on July 5, 2017 and ordered an evaluation by physical therapy and ordered neurosurgery be contacted for an evaluation. (*Id.* ¶ 5, citing EMR 1297.)

Plaintiff submits that he experienced severe constipation and stomach pain due to the pain medication and abdominal muscle weakness. (Compl. ¶ 12) The medication that was provided did not alleviate Plaintiff's constipation or stomach pain. (*Id.*) The Complaint submits that Defendant refused to provide Plaintiff with effective medication and informed Plaintiff he could "either stop taking the pain medication to get rid of the constipation and stomach conditions, or continue taking the pain medication and keep suffering from the severe constipation and related

symptoms." (*Id.* ¶ 13.) Plaintiff choose to stop taking the pain medication and suffered as he had to endure the pain from the surgery, which was exacerbated during physical therapy. (*Id.* ¶ 14.)

Defendant submits Plaintiff complained of constipation on June 29, 2017 and a laxative was ordered. (DSOMF ¶ 2.) On July 6, 2017, an abdominal X-ray was ordered to rule out bowel obstruction which showed no obstruction of his bowel. (*Id.* ¶ 6, citing EMR 1286.) On the same day, Plaintiff reported he had a bowel movement the evening prior and was in no acute pain or distress. (*Id.* ¶ 7, citing EMR 1284.)

Plaintiff submits that Defendant refused to provide Plaintiff with post-surgical care, delayed sending him to the hospital after a fall, and refused to treat his severe constipation and pain. (Compl. ¶ 24.) Defendant submits "while there are indications in the record of weakness and inability to move his legs, the observations by multiple other health care providers are inconsistent and show that he could move his legs at times. (DSOMF ¶ 8, citing EMR 1284, 1276, 1268.) Plaintiff was seen several times "awaiting the MRI." (*Id.* ¶ 10, citing EMR 1154, 1233, 1221.) On July 17, 2017 and July 18, 2017, the medical records show Defendant inquired regarding why the MRI had not been schedules and urged the importance of it being done. (*Id.* ¶ 11, citing EMR 1140.) On July 21, 2017, Plaintiff received an MRI at St. Francis Medical Center and the preliminary reading suggested an abscess at the surgical site. (*Id.* ¶ 12, citing EMR 1111.) Plaintiff was taken to the emergency room and the abscess

was drained under radiographic guidance. (*Id.* ¶¶ 13, 14, citing EMR 1097, 1099.) Plaintiff was given antibiotics and was discharged back to the prison on July 26, 2017. (*Id.* ¶¶ 15, 16, citing EMR 1088, 1097.)

On July 28, 2017, Plaintiff reported feeling better and was ambulating with a walker. (*Id.* ¶ 18, citing EMR 1061.) Plaintiff was given Tylenol with codeine for pain twice a day as needed. (*Id.*) On July 31, 2017, Plaintiff's blood pressure medications were adjusted, and he received antibiotics. (*Id.* ¶ 19, citing EMR 1024.) Plaintiff started physical therapy on August 4, 2017. (*Id.* ¶ 20, citing EMR 1024.) He reported difficulty with bowel movements on August 6, 2017 and was given stool softeners. (*Id.* ¶ 21, citing EMR 958-959.) On August 9, 2017, Plaintiff was given citrate of magnesia for constipation. (*Id.* ¶ 24, citing EMR 926.) On August 17, 2017, it was noted that Plaintiff could ambulate with a slow gait and good control for 150 feet times two. He still complained of numbness and weakness bilaterally. (*Id.* ¶ 27, citing EMR 853.) Plaintiff had a repeat MRI on September 12, 2017, and he was urged to continue physical therapy. (*Id.* ¶¶ 29, 31, citing EMR 335, 505, 520.) On November 25, 2017, a repeat MRI was done. (*Id.* ¶ 33, citing EMR 248-249.) On December 5, 2017, a physical therapy note indicates that Plaintiff reported that his legs were feeling stronger. (*Id.* ¶ 34, citing EMR 245.) Plaintiff was discharged from physical therapy on January 25, 2018. (*Id.* ¶ 35, citing EMR 210-211.)

This Court screened the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and proceeded Plaintiff's Eighth Amendment claim against Defendant. (*See* ECF No. 3.) On April 23, 2021, following briefing by the parties, Honorable Tonianne J. Bongiovanni, United States Magistrate Judge, District of New Jersey, granted Plaintiff's motion for extension of time to file an affidavit of merit and motion for *pro bono* counsel. (ECF No. 32.) Judge Bongiovanni appointed *pro bono* counsel for Plaintiff for the limited purpose of assisting Plaintiff in obtaining the required affidavit of merit in support of his medical malpractice and negligence claims against Defendant. (*Id.*) On September 7, 2021, following a letter request from appointed counsel, Judge Bongiovanni granted appointed counsel's request to be relieved as counsel for Plaintiff and indicated that Plaintiff shall proceed *pro se* in this matter. (ECF No. 38.)

On October 7, 2021, Defendant filed a letter seeking permission to file a motion to dismiss Plaintiff's medical malpractice claim because Plaintiff had not obtained an affidavit of merit in a timely manner. (*See* ECF No. 40.) Judge Bongiovanni granted Defendant's request to submit a motion to dismiss based on the affidavit of merit issue. (ECF No. 41.)

On October 29, 2021, Defendant filed her motion to dismiss or in the alternative motion for summary judgment. (See ECF No. 43.) Defendant seeks dismissal of Plaintiff's medical malpractice claim based on his failure to file an

affidavit of merit, dismissal of Plaintiff's Eighth Amendment claim for failure to state a claim, and dismissal of claims against Defendant in her official capacity. (*See id.*) Plaintiff filed a reply in opposition to the Defendant's motion. (See ECF No. 47.) On October 19, 2022, the Court held an evidentiary hearing. (ECF No. 61.) Plaintiff testified, along with Dr. Arthur M. Brewer, M.D., statewide medical director for University Correctional Healthcare Program.

## III.   LEGAL STANDARDS

Defendant filed the instant motion as a motion to dismiss or in the alternative a motion for summary judgment. In a precedential decision, the Third Circuit expressly held that that "the affidavit of merit is not a pleading requirement" in federal court (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 160, 3d Cir. 2000), and instructed that such motions for dismissal are properly brought under Fed. R. Civ. P. 56 as motions for summary judgment.[1] *Nuveen Municipal Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 303, n.13 (3d Cir. 2012)("That the affidavit [of merit] is not a pleading requirement counsels that a defendant seeking to 'dismiss' an action based on the plaintiff's failure to file a timely affidavit should

---

[1] The affidavit of merit statute states that failure to provide an affidavit of merit "shall be deemed a failure to state a cause of action," N.J.S.A. 2A:53A-29, but the timeline for filing an affidavit of merit is triggered by defendant's filing of an answer. Though state courts construe the failure to file an affidavit as the failure to state a claim at the pleading stage, *see Ferreira v. Rancocas Orthopedic Associates*, 178 N.J. 144, 150 (2003) ("the plaintiff's failure to serve an affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice."), the Third Circuit does not consider the affidavit of merit a pleading requirement or cause for dismissal under Rule 12(b)(6) because the affidavit of merit requirement is triggered only after the answer is filed.

file a motion for summary judgment under Rule 56, and not a motion to dismiss for failure to state a claim under Rule 12(b)(6).”). All parties must receive an opportunity to present material to the court when a motion to dismiss is converted into a motion for summary judgment. *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989). Here, the Court finds both parties have received the opportunity to provide the Court with supplemental briefing and materials and the Court held an evidentiary hearing where Plaintiff was given the opportunity to testify. As such, the Court will view Defendant's motion as a motion for summary judgment.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . .

citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for

summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV.    DISCUSSION

### A. Affidavit of Merit

Defendant argues Plaintiff's state tort claims must be dismissed because Plaintiff did not comply with New Jersey's affidavit of merit statute ("AOM statute"), N.J.S.A. § 2A:53A–26, et seq.

"The stated purpose of the AOM statute, is laudatory—to weed out frivolous claims against licensed professionals early in the litigation process." *Meehan v. Antonellis*, 141 A.3d 1162, 1169 (N.J. 2016) (internal citation omitted). The AOM statute states in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J.S.A. § 2A:53A–27. "The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause." *Id.* "The submission of an appropriate affidavit of merit is considered an element of the claim. Failure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." *Meehan*, 141 A.3d at 1169.

However, "four limited exceptions[,]" where applicable, excuse a plaintiff's failure to comply with the AOM statute. *Nuveen*, 692 F.3d at 305. The limited exceptions are: "(i) a statutory exception regarding lack of information; (ii) a 'common knowledge' exception"; (iii) an exception predicated upon "substantial compliance with the affidavit-of-merit requirement;" or (iv) "'extraordinary circumstances' that warrant equitable relief." *Id.* (citations omitted).

Defendant asserts that Plaintiff was required to serve Dr. Nwachukwu with an AOM. (ECF No. 43-4 at 14-17). Plaintiff concedes he failed to serve an AOM on Defendant but explicitly argues for the application of two of the equitable exceptions to the 120-day deadline: 1) statutory exception regarding lack of information and 2) common knowledge. The Court construes that Plaintiff also argues extraordinary circumstances warrant equitable tolling. *Nuveen*, 692 F.3d at 305.

With regard to the first exception, Plaintiff argues that Defendants failed provide Plaintiff with the "Medical Reference File" ("MRF"), which he claims is necessary for him to procure an AOM. (ECF No. 48 at 16-19.) Plaintiff claims

Defendant had only provided Plaintiff with the "Electronic Medical Record" and the MRF contains "refusal-consent forms, MR-021 forms," which Plaintiff alleges would show that the Electronic Medical Record is inaccurate and would assist him in obtaining the necessary AOM. (*Id.*)

The state statute provides that:

> An affidavit shall not be required . . . if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.

N.J.S.A. § 2A:53A–28.

> N.J.S.A. 2A:53A–28 applies only to medical records or other records having a substantial bearing on preparation of the affidavit[.] A plaintiff may request a great variety of documents to assist in the preparation of a case that are not essential for the preparation of an affidavit of merit. Moreover, it generally would be difficult, if not impossible, for a defendant to distinguish between documents that have "a substantial bearing on preparation of the affidavit [of merit]" and documents that may simply aid the plaintiff in the eventual proof of a case at trial. Therefore, N.J.S.A. 2A:53A–28 must be construed to require a plaintiff to identify with specificity any medical records or other information he believes are needed to prepare an affidavit of merit, in order to trigger the forty-five day period for a response.

*Mangone v. Morris Cty. Surgical Ctr.*, No. A–1200–15T2, 2017 WL 4640098, at *4 (N.J. Sup. Ct. App. Div. Oct. 17, 2017) (quoting *Scaffidi v. Horvitz*, 343 N.J. Super. 552, 558–59 (App. Div. 2001)). While "wholesale refusal to produce the medical records" by a defendant may create a presumption that the withheld records have a substantial bearing on the preparation of an AOM, when some records have been provided but not others, it is Plaintiff's burden to show why the withheld records are substantial for the purposes of an AOM. *Id.* at *5.

Here, Plaintiff does not submit that he provided Defendant with a "sworn statement in lieu of the affidavit" as required by § 2A:53A-28. Plaintiff does not argue that he supplied Defendant with the medical records being sought or an assertion that they are necessary for him to obtain an AOM. Plaintiff admits that he received some of his medical records. As such, it is Plaintiff's burden to assert and notify Defendant that the missing records are necessary for an AOM. Plaintiff does not argue that he provided Defendant with a "sworn statement" as required under § 2A:53A–28.

With regard to the second exception, Plaintiff argues that a layperson can apply general understanding and common sense to find Defendant breached a duty of care by (1) denying medical treatment to Plaintiff for constipation; (2) by sending Plaintiff to general population without a walker or cane in violation of the surgeon's

order; and (3) by delaying sending Plaintiff to the hospital after he fell. (ECF No. 47 at 13-16.)

In "exceptionally rare cases . . ., an expert is not needed to demonstrate that a defendant professional breached some duty of care 'where the carelessness of the defendant is readily apparent to anyone of average intelligence.'" *Cowley v. Virtua Health Sys.*, 230 A.3d 265, 274 (N.J. 2020) (quoting *Rosenberg v. Cahill*, 492 A.2d 371, 374 (1985)). "The common knowledge exception is construed narrowly 'to avoid noncompliance with the statute.'" *Id.* at 275 (quoting *Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 501 (N.J. 2001)). By way of example, courts have applied the exception to cases in which the wrong tooth was extracted, *Hubbard*, 774 A.2d at 500–01, or in which a pharmacist filled a prescription with the wrong drug, *Bender v. Walgreen* E. Co., 945 A.2d 120, 123 (N.J. Sup. Ct. App. Div. 2008).

Here, Plaintiff alleges that Defendant ignored his complaints that he could not walk and returned him to his nonmedical unit cell, causing Plaintiff to fall and hurt himself. (ECF No. 47 at 13-15.) Plaintiff claims Defendant ignored the surgeons order to keep him in the infirmary. However, Plaintiff admits that he remained in the infirmary for four days after his surgery, before Defendant returned him to his housing unit. (*Id.* at 13.) Plaintiff argues that Defendant delayed sending Plaintiff to the hospital and getting Plaintiff an MRI. (*Id.* at 15.) However, Plaintiff does admit, and the medical records show, that he was sent to the hospital and received an MRI.

Plaintiff claims Defendant also refused him constipation medication during his second stay in the infirmary. (*Id.* at 16.)

It is evident that Plaintiff did receive treatment throughout the relevant time period. How much treatment was necessary and when that treatment was necessary is a question for a medical expert. Proper practices following back surgery are not within the common knowledge of an average person. The Court concludes these are not claims that fall within the exceptionally rare instances "where a person of reasonable intelligence can use common knowledge to determine that there was a deviation from a standard of care." *Cowley*, 230 A.3d at 269.

The Court construes Plaintiff's reply brief as also asserting the extraordinary circumstances exception. Plaintiff alleges the electronic medical record that was provided by Defendant has been "tampered with and contain[s] inaccurate information." (ECF No. 47 at 17.) The reply brief submits that "Plaintiff was unable to secure an AOM [] due to Defendant's extreme and outrageous conduct of submitting inaccurate medical records showing that Plaintiff was promptly treated, when in reality medical treatments were denied and delayed by Defendant." (*Id.* at 26.) Plaintiff alleges two notes in the medical record that indicate Plaintiff received treatment for his constipation are false. (ECF No. 47, Ex. 1, Plaintiff's Declaration ¶¶ 6-8.) Plaintiff argues the medical record that indicates that he was returned to the infirmary for high blood pressure is false, and he was in fact readmitted because he

fell and injured himself. (*Id.* ¶ 9.) Plaintiff alleges that Defendant "tampered with the August 8, 2017 neurosurgery consultation report by writing her name on it as the provider, instead of Dr. Ahsan's name, to make it seem like she ordered the neurosurgery consult." (*Id.* ¶ 11.) Plaintiff also submits that the record that indicates Plaintiff reported feeling better is also false. (*Id.* ¶ 17.)

Dr. Arthur Brewer, M.D., testified at the evidentiary hearing that the electronic medical records are in the custody of the Department of Corrections. (ECF No. , at 7:12-17.) Dr. Brewer testified that once an electronic medical record is signed off on by the person entering the record, the record cannot be altered. (*Id.*, at 7:18 to 8:5.) Dr. Brewer testified that he examined Plaintiff's paper and electronic medical records and found no indication that they were altered or incomplete. (*Id.*, at 8:6-22.) Dr. Brewer testified that there was nothing in the paper medical record that contradicts the electronic medical records. (*Id.*, at 9:3-17.)

Courts have "yet to define the full scope of extraordinary circumstances as an equitable remedy for failure to comply with the statute." *Vitale v. Carrier Clinic, Inc.*, 409 F. App'x 532, 534 (3d Cir. 2010) (quoting *Paragon Contractors, Inc. v. Peachtree Condo. Ass'n*, 997 A.2d 982, "986 (N.J. 2010)). "It is clear, however, that '[w]hat constitutes an "extraordinary circumstance" is a fact-sensitive analysis; in short, the circumstances must be "exceptional and compelling."'" *Brown v. United States*, No. 15-7734, 2017 WL 1064665, at *6 (D.N.J. Mar. 21, 2017) (quoting

16

*Seldon v. Rebenack, Aronow & Mascolo, LLP*, 541 F. App'x 213, 215 (3d Cir. 2013)) (alteration in original). "'[E]xtraordinary circumstances' may justify an additional extension of time, provided that the circumstances do not evidence 'mere carelessness or lack of proper diligence.'" *Fontanez v. United States*, 24 F. Supp. 3d 408, 413 (D.N.J. 2014) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 162 (3d Cir. 2000)). To excuse timely compliance with the AOM requirement due to extraordinary circumstances, "the Court must determine that Plaintiff 'has provided [an] adequate excuse for [his] failure to comply with the [Affidavit of Merit] statute." *Id.* at 414 (quoting *Chamberlain*, 210 F.3d at 162).

Here, Plaintiff alleges that he is unable to obtain an AOM because Defendant has falsified his medical records. Defendants have provided Plaintiff and the Court with a complete copy of Plaintiff's physical and electronic medical record. Dr. Brewer testified on behalf of the defense that the medical records have not been altered in any way and are a complete copy of Plaintiff's records. The Court finds the testimony of Dr. Brewer to be fully credible. As such, the Court finds Plaintiff has failed to show that an extraordinary circumstance prevented Plaintiff from complying with the Affidavit of Merit statute. Therefore, Defendant's motion for summary judgment is granted as to this issue and Plaintiff's state tort claims are dismissed.

### B.  Eighth Amendment Failure to Provide Medical Treatment

Defendants also seeks dismissal of Plaintiff's complaint in its entirety, arguing that the medical records do not support a claim for Eighth Amendment deliberate indifference or "willful medical malpractice." (ECF No. 43-4 at 19-24.) Plaintiff responded, arguing that while he did receive some treatment, Defendant ineffectively treated his constipation and inability to walk post-surgery. (*See* ECF No. 47 at 13-19.)

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if

untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations

and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

Here, the medical records show that from June 26, 2017 to April 19, 2018, Plaintiff was receiving medical treatment. On July 29, 2017, Plaintiff was given a laxative following complaints of constipation. (EMR at 1350.) On July 3, 2017, Plaintiff was seen with complaints of numbness in legs, inability to walk, and falling, and it was ordered that Plaintiff continue infirmary care. (*Id.* at 1322, 1324.) It was noted on that day that Plaintiff was in a wheelchair and independently got to the bathroom two times and was in no distress. (*Id.* at 1317.) On July 5, 2017, Defendant examined Plaintiff and noted complaints of weakness and constipation. (*Id.* at 1296.) Defendant ordered new medications for Plaintiff, referred him to physical therapy for evaluation, and ordered neurosurgery be contacted for evaluation. (*Id.* at 1298.) On July 6, 2017, Plaintiff received an abdominal X-ray, which showed no bowel obstruction. (*Id.* at 1286.) That same day, Defendant examined Plaintiff and called neurosurgery for review. Plaintiff was given a walker. (*Id.* at 1280.) On July 7, 2017, the records indicate that Plaintiff reported improvement but was unable to walk due to balance. Plaintiff was ambulating with a wheelchair. (*Id.* at 1270.) Plaintiff was then examined almost daily for leg numbness and weakness. (*Id.* at 1141-1269.) On

July 18, 2017, Defendant informed the scheduler that it was urgent that Plaintiff receive an MRI. (*Id.* at 1140.) On July 21, 2017, Plaintiff received an MRI and had an abscess drained as a result. (*Id.* at 1097, 1099.) Plaintiff was given antibiotics, Tylenol with codeine, and began physical therapy. (*Id.* at 980, 1062, 1097.) Plaintiff was also given a stool softener following reports of constipation. (*Id.* at 958-959.) Plaintiff was seen consistently throughout August 2017 and was given Citrate of Magnesia and was told to increase his fluid intake to help with constipation. (*See Id.* 640-945.) Plaintiff received follow up MRIs in September and November 2017. (*Id.* at 248-249, 505.) Plaintiff also continued to receive physical therapy through January 2018. (*Id.* at 210-211.)

Defendant argues that Plaintiff received continuous health care and has offered no subjective evidence that Defendant intentionally deprived him of medical treatment or was aware of a substantial risk of serious harm to Plaintiff and disregarded it. (ECF No. 43-4 at 22.) Plaintiff acknowledges that he received an X-ray to see if he had a bowel obstruction, but argues Defendant refused to treat his constipation. (ECF No. 47 at 24-25.)

Plaintiff's medical record indicate that Plaintiff was given medication for his constipation and received an X-ray to ensure that he did not have a bowel blockage. Plaintiff had consistent, near daily physical examinations. Plaintiff received surgery to drain an abscess at his surgery site. Plaintiff received antibiotics, pain medication,

and physical therapy. In sum, the records show that Plaintiff was receiving consistent treatment throughout the entirety of the time in question. Plaintiff has failed to present evidence to show that Defendant was aware of serious risk to Plaintiff and failed to provide the care needed. Therefore, Defendant's motion for summary judgment will be granted as to the Eighth Amendment failure to provide medical care claim.

## V.  CONCLUSION

For the reasons expressed above, the Court will grant Defendant's motion for summary judgment (ECF No. 43) and will dismiss Plaintiff's Complaint. An appropriate order follows.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

January 11, 2023